# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**VICTORIA A. RONQUILLO,**

      **Plaintiff,**

      **vs.**                            **Civ. No. 24-1241 KWR/JFR**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 12)[2] filed February 10, 2025, in connection with Plaintiff's *Motion to Reverse and Remand With Supporting Memorandum,* filed March 12, 2025. Doc. 14. On May 13, 2025, Defendant filed a Response. Doc. 20. On May 27, 2025, Plaintiff filed a Reply. Doc. 21. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's Motion is well-taken and recommends that it be **GRANTED**.

## I. Background and Procedural Record

Plaintiff Victoria A. Ronquillo ("Ms. Ronquillo") alleges that she became disabled on May 1, 2020, at the age of forty-six years, because of fibromyalgia, migraines, arthritis, acid

---

[1] On December 16, 2024, United States District Judge Kea W. Riggs entered an Order of Reference referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 10.

[2] Hereinafter, the Court's citations to Administrative Record (Doc.12), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

reflux, Hashimoto's thyroid disease, asthma/COPD, high blood pressure, Hallux rigidus, and anxiety.  Tr. 73.  Ms. Ronquillo has a high school diploma and worked as a caregiver and phlebotomist.  Tr. 314, 329-37.  Ms. Ronquillo stopped working on May 1, 2020, because of her grandmother's passing and worsening medical conditions.  Tr. 318.

On October 3, 2022, Ms. Ronquillo protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  Tr. 164-65.  On April 11, 2023, Ms. Ronquillo's application was denied upon initial review.  Tr. 72, 73-83, 99-103.  On July 28, 2023, it was denied at reconsideration. Tr. 84, 85-95, 106-09.  On August 30, 2023, Ms. Ronquillo requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 7, 2024, before ALJ Mark Swayze.  Tr. 40-71, 137-38.  Ms. Ronquillo was represented at the hearing by Attorney Michelle Baca.[3]  *Id.*  On April 1, 2024, ALJ Swayze issued an unfavorable decision.  Tr. 20-34.  On October 16, 2024, the Appeals Council issued its decision denying Ms. Ronquillo's request for review and upholding the ALJ's final decision.  Tr. 1-6.

On December 11, 2024, Ms. Ronquillo timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Doc. 1.  Ms. Ronquillo argues that the ALJ improperly evaluated the opinion of consultative examiner, Paula Hughson, M.D., and erred when he discounted Ms. Ronquillo's subjective allegations of chronic pain and other symptoms and impermissibly excluded her diagnosis of somatic symptom disorder from the symptoms analysis. Doc. 14.  For the reasons discussed below, the Court finds that the ALJ failed to properly consider Dr. Hughson's opinion pursuant to 20 C.F.R. § 404.1520c and that his reasons for rejecting Dr. Hughson's assessed limitations are not supported by substantial evidence.

---

[3] Ms. Ronquillo is represented in these proceedings by Attorney Laura Johnson.  Doc. 1

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months".  42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1).  This is called the claimant's residual functional capacity

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

See 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.    Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371,

1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

### III. <u>Analysis</u>

The ALJ determined that Ms. Ronquillo met the insured status requirements of the Social Security Act through December 31, 2025, and that she had not engaged in substantial gainful activity during the period from her alleged onset date of May 1, 2020. Tr. 25. The ALJ found that Ms. Ronquillo had severe impairments of degenerative disc disease, chronic obstructive pulmonary disease (COPD), asthma, migraines, fibromyalgia, anxiety disorder, and somatic symptom disorder. *Id.* The ALJ further noted Ms. Ronquillo's history of gastroesophageal reflux disease (GERD), hypertension, and hyperthyroidism are controlled with medications and do not cause work-related limitations lasting 12 consecutive months. *Id.* The ALJ determined that Ms. Ronquillo's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 26. Accordingly, the ALJ proceeded to step four and found that during the relevant period of time Ms. Ronquillo had the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) except that

> she can occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs, never climb ladders/ropes/scaffolds, and frequently handle, finger, reach, and feel. The

claimant must avoid concentrated exposure to loud noise and irritants such as fumes, odors, dust, gases, and poorly ventilated areas.  The claimant can understand, carry out and remember simple, routine instructions, make simple decisions, perform simple, routine tasks at a consistent pace but not a production-rate pace where each task must be completed within a strict time deadline, interact occasionally with the public, supervisors, and co-workers, and respond appropriately to occasional changes in routine work settings.

Tr. 28.  The ALJ determined that Ms. Ronquillo was unable to perform her past relevant work, but considering her age, education, work experience, and residual functional capacity, that through the date last insured there were jobs that existed in significant numbers in the national economy Ms. Ronquillo could perform.[5]  Tr. 32-33.  The ALJ determined, therefore, that Ms. Ronquillo was not disabled.  Tr. 33.

### A.    Relevant Evidence Related to Ms. Ronquillo's Ability to Do Work-Related Mental Activities

### 1.    Paula Hughson, M.D.

On February 28, 2023, Ms. Ronquillo presented to Paula Hughson, M.D., for a consultative psychiatric examination.  Tr. 842-50.  Relevant to her psychiatric problems, Ms. Ronquillo reported that she was being treated for anxiety with medication, that she didn't go out, and that she experienced anxiety around people other than her family.  *Id.*  Ms. Ronquillo described being physically sick a lot since 2016 during which time she was also coping with several major family stressors.  *Id.*  Dr. Hughson took medical, psychiatric, work, family, and education histories.  *Id.*  On mental status exam, Dr. Hughson noted Ms. Ronquillo was not able to spell "WORLD" backwards, her affect was slightly unresponsive consistent with alexithymia, her mood was anxious and "depleted," she provided a "[d]isjointed biographical narrative," her

---

[5] The VE expert identified representative occupations of Office Helper (DOT code 239.567-010, light exertion, unskilled, SVP 2, 11,000 jobs nationally); Merchandise Marker (DOT code 209.587-034, light exertion, unskilled SVP 2, 131,000 jobs nationally); and Router (DOT code 222.587-038, light exertion, unskilled, SVP 2, 32,000 jobs nationally).  Tr. 33.

6

thought content was "high in somatic preoccupation," she had low average intelligence and fund of information, her insight was limited, and her judgment was fair. *Id.*

Dr. Hughson made Axis I diagnoses of somatic symptom disorder, panic disorder with agoraphobic r/o complex PTSD, and insomnia; Axis II diagnosis was deferred; Axis III diagnosis referred to medical history as reported; Axis IV diagnosis of adverse childhood experiences; and an Axis V GAF score of 45-48 - serious symptoms and impairment.[6] *Id.* Dr. Hughson provided a narrative addressing Ms. Ronquillo's medical history of fibromyalgia, migraines, arthritis, acid reflux, Hashimoto's thyroid disease, asthma/COPD, and high blood pressure – all of which she found generally consistent with the record provided. *Id.* Dr. Hughson also provided a narrative addressing Ms. Ronquillo's complaints of significant anxiety and panic in public situations as follows:

> She avoids leaving the house and no longer goes grocery shopping. While not psychologically minded, she is able to convey feeling "depleted" over having to endure harrowing experiences of caring for loved ones – her four children, two nephews and a niece, her father who died with esophageal cancer 16 years ago, and her paternal grandmother – between 2006 and 2020, and having to put her own needs aside to be "the strong one" for her family. Earlier history is also notable for multiple Adverse Childhood Experiences including young substance using parents, a mother who took no interest in her, frequent family disjunctions, a limited education, and taking on the responsibilities of marriage and raising children since age 15. Her presentation on MSE is consistent with what is frequently seen in somatoform disorders, including incongruous affect (the old *la belle indifference*), alexithymia, and concrete, operational thinking. There is no evidence of organicity psychosis, or suicidality. Besides meeting criteria for Somatoform Disorder, an argument could be made for Complex PTSD as there are clear elements of reexperiencing, avoidance, high emotional arousal, vulnerability to victimization, feelings of guilt, and definite altering effects of repeated trauma on personality

---

[6] The GAF is a subjective determination based on a scale of 100 to 1 of a "clinician's judgment of the individual's overall level of functioning." *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 32. A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 34. *See generally*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (considering GAF scores and expressing "concern" with scores of 46 and 50); *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (unpublished) ("Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work . . ." but "[a] GAF score of fifty or less, . . . does suggest an inability to keep a job.").

> development.  Mrs. Ronquillo is adversely affected by her emotional problems to a
> marked degree in virtually all domains, as exemplified by the history and findings
> conveyed here.  She would likely benefit from a reliable and well structured
> treatment plan to include psychoeducation and gradual introduction to evidence
> based psychotherapy modalities for disorders of traumatic stress.  Restoration of
> sleep will be paramount given her propensity to rheumatic disorders.  This might
> include a sleep evaluation, sleep hygiene education and carefully monitored
> medication as tolerated.  Mrs. Ronquillo appears entirely capable of managing any
> benefits awarded to her.

*Id.*  As to her ability to do work-related mental activities, Dr. Hughson assessed Ms. Ronquillo

had *no impairment* in her ability to (1) understand and remember very short and simple

instructions and (2) be aware of normal hazards and react appropriately; that she is *mildly*

*impaired* in her ability to work without supervision; that she is *mildly to moderately impaired* in

her ability to interact with supervisors; that she is *mildly to markedly impaired* in her ability to

understand and remember detailed or complex instructions; that she is *moderately impaired* in

her ability to interact with coworkers; that she is *moderately to markedly impaired* in her ability

to attend and concentrate; and that she is *markedly impaired* in her ability to (1) carry out

instructions, (2) interact with the public, (3) adapt to changes in the workplace, and (4) use

public transportation or travel to unfamiliar places.  Tr. 849.

   The ALJ found Dr. Hughson's assessment unpersuasive.  Tr. 32.  The ALJ explained that

her

> opinion was generally supported by some of the evaluation findings during the
> single encounter, but it was not consistent with the claimant's longitudinal record
> which did not show mental health treatment and showed the ability to work/work
> history and the ability to care for herself and others.

*Id.*

2.    <u>**Nonexamining State Agency Consultants**</u>

On March 2, 2023, nonexamining State agency psychological consultant Karla Delcour, Ph.D., reviewed the medical evidence record at the initial level of review.[7]  Tr. 75-76. Dr. Delcour prepared a Psychiatric Review Technique ("PRT")[8] and rated the degree of Ms. Delcour's functional limitation in her ability to understand, remember, or apply information as *moderate*; to interact with others as *moderate*; to concentrate, persist, or maintain pace as *moderate*; and to adapt or manage oneself as *moderate*.  Tr. 77.

Dr. Delcour also prepared a Mental Residual Functional Capacity Assessment ("MRFCA") in which she found in Section I that Ms. Ronquillo was *moderately limited* in her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (8) respond appropriately to changes in the work setting. Tr. 80-82.

---

[7] Dr. Delcour reviewed Dr. Hughson's Consultative Psychiatric Exam.  Tr. 76.  Dr. Delcour stated that Dr. Hughson's "[o]pinion of severity appears inconsistent with the objective information such as work history and lack of treatment for a mental disorder and ability to care for herself and others."  *Id.*

[8] "The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.

Based on her Section I findings, Dr. Delcour assessed in Section III that Ms. Ronquillo "can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for a significant length of time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." *Id.* at 81.

On July 19, 2023, nonexamining State agency psychological consultant Scott R. Walker, M.D., reviewed the record at reconsideration and affirmed Dr. Delcour's assessment. Tr. 88, 95-96.

The ALJ found these opinions partially persuasive. Tr. 31-32. He explained that he found their

> opinions were supported by the doctors' explanations, but they were not fully consistent with subsequent evidence, including testimony about her isolation at home and difficulty adapting to change, and the undersigned finds those opinions partially persuasive.

Tr. 32.

### B.  Evaluating Medical Opinions

An ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he or she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors are "supportability ... and consistency." 20 C.F.R. § 404.1520c(a). The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s), the more persuasive the medical opinions will be.' " *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 & n.8 (10th Cir. July 6, 2021). (internal brackets and ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 416.920c(c)(1)). Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.' " *Id.* (internal ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 416.920c(c)(2)).  The SSA does not give "any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. § 416.920c(a).

When evaluating the supportability and consistency of a medical source's opinions, "all the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings."  *Lobato v. Kijakazi*, 2022 WL 500395, at *11 (D.N.M. Feb. 18, 2022) (quoting *Grogan*, 399 F.3d at 1262).  The ALJ also cannot "pick and choose among medical reports," using only portions of evidence that are favorable to his position and disregarding those that are not.  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).  This requirement, though, does not mean that the ALJ must discuss every piece of controverted evidence.  *See Clifton*, 79 F.3d at 1009-10.  Rather, it merely requires the ALJ to show that he considered evidence unfavorable to his findings before making them.  *See id.* at 1010.  Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision."  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

### C.    Arguments Regarding Dr. Hughson's Opinion

Ms. Ronquillo argues that the ALJ erred in his evaluation of Dr. Hughson's assessment for several reasons.  Ms. Ronquillo begins by noting the ALJ mischaracterized Dr. Hughson as a "consultative psychologist" when in fact she is a psychiatrist with a medical degree.  Doc. 14 at 7.  Ms. Ronquillo generally argues that while the ALJ discussed Ms. Ronquillo's subjective allegations and medical history earlier in his decision, he does not cite the evidence he relies upon for rejecting Dr. Hughson's opinion and there is no analysis linking any evidence to the ALJ's evaluation of  Dr. Hughson's opinion.  *Id.* at 7-8.  More specifically, Ms. Ronquillo argues that each of the ALJ's reasons for rejecting Dr. Hughson's opinion are not supported by substantial evidence.

For instance, Ms. Ronquillo argues that the ALJ's reliance on Ms. Ronquillo's lack of mental health treatment is inapposite because Ms. Ronquillo testified that she believed medication would control her symptoms, she had not been directed by her health care providers to seek mental health care, and Dr. Hughson's assessment indicated that Ms. Ronquillo was "not psychologically minded" and may not have understood the appropriate treatment for or the need for consistent treatment of her impairment.  *Id.*  Ms. Ronquillo argues that an ALJ "will not find [a claimant's] symptoms inconsistent with the evidence" due to a lack of treatment "without considering possible reasons" for not seeking treatment, including that a claimant may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment.  *Id.* (citing SSR 16-3p)*.*  Ms. Ronquillo also cites an opinion by Magistrate Judge Yarbrough in which he explained that "where all relevant medical opinion evidence points to a conclusion different than the one the ALJ reached, lack of treatment alone does not constitute

substantial evidence needed to support the ALJ's conclusion." *Id.* (citing *Torres v. Kijakazi*, 2021 WL 4307201, at \*8 (D.N.M. Sept. 22, 2021)).

Ms. Ronquillo argues that the ALJ's reliance on her ability to work/work history is undermined by the ALJ's finding that Ms. Ronquillo had not engaged in substantial gainful activity since her alleged onset date and that she is incapable of performing her past work. *Id.* Ms. Ronquillo cites an opinion by Magistrate Judge Sweazea in which he concluded that without further elaboration, the Court could not "conclude that Plaintiff's work history is relevant evidence which adequately supports the ALJ's findings [that work history undercuts assessed limitations]." *Id.* (citing *Brown v. Saul*, 2019 WL 6888269, at \*3 (D.N.M. Dec. 18, 2019)). Ms. Ronquillo argues that similarly here the ALJ has failed to explain what bearing Ms. Ronquillo's ability to work prior to her alleged onset date has on her ability to work for the relevant time period or how it is inconsistent with Dr. Hughson's opinion. *Id.*

Last, Ms. Ronquillo argues that the ALJ's reliance on her "ability to care for herself and others" is inconsistent with her function reports and testimony and that the ALJ fails to cite to any specific abilities or examples of care that contradict Dr. Hughson's opinion limitations. *Id.*

Ms. Ronquillo argues that the ALJ's error is harmful because a more restrictive RFC would have resulted had the ALJ found Dr. Hughson's limitations persuasive. Doc. 14 at 11-12. Particularly here where Dr. Hughson assessed that Ms. Ronquillo is markedly impaired in her ability to carry out instructions and adapt to changes in the workplace, both of which are required to perform unskilled work, and where Dr. Hughson assessed that Ms. Ronquillo is markedly impaired in her ability to interact with the public, which could preclude competitive employment. *Id.*

The Commissioner contends that the ALJ properly evaluated Dr. Hughson's medical opinion and found it not entirely consistent with other evidence in the record.  Doc. 20 at 12-18. To begin, the Commissioner contends that the ALJ's misstatement regarding Dr. Hughson's medical credentials is harmless.  *Id.*  Next, citing *Endriss v. Astrue*, 506 F. App'x 772, 775 (10th Cir. 2012), the Commissioner contends that the ALJ's summary of Dr. Hughson's consultative evaluation earlier in his decision is sufficient for linking his later consideration of her opinion and suffices to allow the Court to follow the ALJ's reasoning.  *Id.*  To that end, the Commissioner contends while the ALJ recognized that Dr. Hughson's "single encounter" with Ms. Ronquillo revealed some abnormalities, he reasonably concluded the longitudinal evidence was not consistent with marked mental work limitations.  Doc. 20 at 13-18.

As for the ALJ's reasons for rejecting Dr. Hughson's opinion, the Commissioner contends that agency regulations explicitly instruct an ALJ to consider a claimant's treatment "other than medication" when evaluating the limiting effects of a claimant's symptoms such that it was entirely appropriate and reasonable for the ALJ to find Ms. Ronquillo's lack of specialized mental health treatment was inconsistent with Dr. Hughson's assessed limitations.  *Id.*  Further, the Commissioner contends that Ms. Ronquillo has not alleged any specific barriers to seeking treatment.  *Id.*  The Commissioner also contends that Ms. Ronquillo's reliance on Judge Yarbrough's opinion in *Grantham* is misplaced because in that case the ALJ had disregarded the only medical source opinion based on lack of evidence in the file while here the ALJ relied on the nonexamining State agency psychological consultant opinions, both of which found that Dr. Hughson's opinion was inconsistent with the longitudinal evidence and that Dr. Hughson had overestimated Ms. Ronquillo's mental limitations.  *Id.*

14

The Commissioner contends that regulations provide that an ALJ may consider prior work history when evaluating the limiting effects of a claimant's symptoms and that Ms. Ronquillo herself reported that she stopped working as a caregiver in part because grandmother, whom she cared for, passed away. *Id.* (citing 20 C.F.R. § 404.1529(c)(3)).

Finally, the Commissioner contends that the ALJ properly considered Ms. Ronquillo's daily activities when evaluating the limiting effects of her symptoms and in the face of conflicts in the record the ALJ was tasked with resolving them. *Id.* For instance, the Commissioner contends that while Ms. Ronquillo points to evidence suggesting she is more limited, *i.e.,* spends most of the day in bed, her husband does most of the household chores, and she rarely goes outside, other record evidence supports that Ms. Ronquillo reported she performs her activities of daily living without assistance, helps care for others and pets, and participates in household chores. *Id.*

In Reply, Ms. Ronquillo reargues her position that the ALJ has not provided clarity or a sufficient path for the Court to follow his reasoning because he failed to link any evidence to his evaluation of Dr. Hughson's opinion and that the ALJ's reasons for rejecting Dr. Hughson's opinion are not supported by substantial evidence. Doc. 21.

### D.  <u>The ALJ Failed To Cite Any Specific Evidence To Support His Findings of Inconsistency and His Reasons for Rejecting Dr. Hughson's Opinion Are Not Supported by Substantial Evidence</u>

The Court acknowledges that the ALJ's determination includes a summary of the medical evidence record. His brief summary of Dr. Hughson's eight-page evaluation is as follows:

> Upon consultative psychological evaluation in February 2023, the claimant endorsed symptoms including pain, headaches, anxiety, decreased energy, flashbacks, and insomnia (Exhibit 9F3-4). She was oriented, her memory was intact, she had some concentration problems, her affect was slightly unresponsive, her mood was anxious, her intelligence was low average, and her insight was limited (Exhibit 9F6). She was diagnosed with somatic symptom disorder, panic

disorder with agoraphobia, rule-out complex posttraumatic disorder, and insomnia (Exhibit 9F6).

Tr. 31. Later in the determination, the ALJ separately addressed the medical opinion evidence where he summarized Dr. Hughson's assessed limitations, found that her opinion was "generally supported by some of the evaluation findings during the single encounter," and ultimately rejected Dr. Hughson's opinion stating, without more, that it was inconsistent with Ms. Ronquillo's longitudinal record which showed (1) a lack of mental health treatment; (2) her ability to work/work history; and (3) her ability to care for herself and others.[9]  Tr. 32.

As explained below, the Court finds that notwithstanding the ALJ's brief summary of Dr. Hughson's opinion elsewhere in the determination, the ALJ failed to cite any specific evidence to support his consideration of Dr. Hughson's opinion and that the ALJ's reasons for finding Ms. Ronquillo's longitudinal record inconsistent with Dr. Hughson's assessment limitations are not supported by substantial evidence.

## 1.    **Lack of Treatment**

Here, at step two, the ALJ assessed Ms. Ronquillo with severe mental impairments of anxiety disorder and somatic symptom disorder. Tr. 25. As to the former, the medical evidence record supports that since 2019 healthcare providers have prescribed and Ms. Ronquillo has taken Hydroxyzine for anxiety. Tr. 434-35, 443, 461, 465, 471, 496, 499, 508, 511, 521, 530, 534, 567. Ms. Ronquillo testified to and the ALJ acknowledged same. Tr. 29, 57. The medical evidence record also supports that Ms. Ronquillo has not sought treatment in the form of counseling for her anxiety. Tr. 29, 30, 57, 387. As to the latter, it was Dr. Hughson in February 2023 who diagnosed Ms. Ronquillo with somatic symptom disorder and there is no evidence in

---

[9] The ALJ's reasons for rejecting Dr. Hughson's assessed limitations are copied from the nonexamining State agency psychological consultants' evaluations of Dr. Hughson's assessed limitations.  Tr. 76, 90.

the record of Ms. Ronquillo receiving treatment specific to that diagnosis following

Dr. Hughson's diagnosis.  Thus, while the record supports that Ms. Ronquillo has received

treatment for her anxiety with medication, the ALJ nonetheless relied on a "lack of mental health

treatment" in the form of counseling as his first reason for finding Dr. Hughson's assessed

limitations inconsistent with the longitudinal evidence.

An ALJ may properly consider a claimant's lack of treatment when determining if a

medical source opinion is consistent with the record. *See, e.g.*, *Torres*, 2021 WL 4307201, at *8

("In other words, lack of treatment is but one portion of the overall record to be considered and

that could help support or undermine a medical source's opinion.").  But, an ALJ must explain

his rejection of significantly probative contradictory evidence, *Clifton*, 79 F.3d at 1010, and may

not "mischaracterize or downplay evidence to support h[is] findings." *Bryant v. Comm'r, SSA*,

753 F. App'x 637, 641 (10th Cir. 2018) ("[A]n ALJ is entitled to resolve conflicts in the record,"

but she may not "mischaracterize or downplay evidence to support her findings.").  Additionally,

an ALJ's failure to discuss why a claimant may have failed to obtain mental health treatment

may render an ALJ's rationale legally inadequate.  *See Griego v. Kijakazi*, 2022 WL 35817, at

*6 (D.N.M. Jan. 4, 2022) ("Given that the ALJ did not discuss why Plaintiff may have failed to

obtain mental health treatment – a topic [the consultative examiner] broached in her report – the

Court finds that ... the ALJ's rationale is legally inadequate.").

In her February 2023 report, Dr. Hughson observed that Ms. Ronquillo was not

"psychologically minded" and assessed Ms. Ronquillo's presentation as "consistent with what is

frequently seen in somatoform disorders, including incongruous affect (the old *la belle*

*indifference*),[10] alexithymia,[11] and concrete, operational thinking." Tr. 847. Indeed, when asked whether she thought counseling might help, Ms. Ronquillo reported to Dr. Hughson that "I don't know what would come out of it." Tr. 844. Dr. Hughson also diagnosed and provided a long list of Ms. Ronquillo's adverse childhood experiences and assessed that Ms. Ronquillo was "adversely affected by her emotional problems to a marked degree in virtually all domains" and that she "would likely benefit from a reliable and well structured treatment plan to include psychoeducation and gradual introduction to evidence based psychotherapy modalities for disorders of traumatic stress." Tr. 847-48. Notably, the ALJ's brief summary of Dr. Hughson's opinion does not include any of the foregoing from Dr. Hughson's evaluation and his consideration of Dr. Hughson's assessed limitations fails to explain his rejection of this probative evidence in which Dr. Hughson intimates why Ms. Ronquillo may not have obtained mental health treatment in the form of counseling.

Additionally, at the March 7, 2024, hearing, when asked if she was in mental health therapy, Ms. Ronquillo testified that she was not

> [b]ecause they – the doctors said I'm not severe-severe, that I can control it as long as I take my medications and I'll be okay. That's what they – that's what the doctor told me, I'm not sure. I'm not – they didn't tell me I had to go to a medical facility or anything like that.

Tr. 57. Here too, the ALJ's summary of the hearing testimony or his consideration of Dr. Hughson's assessed limitations fail to include Ms. Ronquillo's response.

---

[10] *La belle indifference* is defined as a paradoxical absence of psychological distress despite a serious medical illness or symptoms of a health condition. *See* https://pubmed.ncbi.nlm.nih.gov/32809677/ (last visited Sept. 3, 2025).

[11] Alexithymia is characterized by an impaired ability to be aware of, explicitly identify, and describe one's feelings. *See* https://pmc.ncbi.nlm.nih.gov/articles/PMC8456171/ (last visited Sept. 3, 2025).

Because the ALJ did not include or discuss why he discounted probative evidence in rejecting Dr. Hughson's opinion, the Court cannot determine whether the ALJ applied appropriate legal standards and whether his reliance on Ms. Ronquillo's lack of mental health treatment is supported by substantial evidence. *Griego,* 2022 WL 35817, at *6; *see also Baca Griego v. Kijakazi*, 2022 WL 35817, at *6 (D.N.M. Jan. 4, 2022) (finding that the ALJ's failure to discuss why claimant may have failed to obtain mental health treatment – a topic broached in the subject report – renders the ALJ's rationale is legally inadequate and that under these circumstances the claimant's failure to obtain mental health treatment fails to constitute a legitimate reason to reject opinion).

### 2.    Ability to Work/Work History

The ALJ's second stated reason for rejecting Dr. Hughson's assessed limitations is Ms. Ronquillo's ability to work and work history. Tr. 32. The ALJ, however, fails to cite to any specific evidence in support. The ALJ's determination makes only three references to Ms. Ronquillo's work history, *i.e.,* that she testified she last worked as a self-employed phlebotomist and as an in-home caregiver in 2020, that she is unable to perform her past relevant work, and that her work history was one factor considered in determining whether there are jobs existing in significant numbers that the can perform. Tr. 29, 32. Without more, it is not clear to the Court what evidence the ALJ is relying on to support how Ms. Ronquillo's past work and/or work history undercuts Dr. Hughson's assessed limitations or its relevance in general. *See Brown*, No. 2019 WL 6888269, at *3. And to echo Judge Sweazea, this is especially troubling considering the ALJ determined that Ms. Ronquillo is unable to perform her past relevant work as a home care provider or phlebotomist. *Id.* Thus, in the absence of further elaboration from the ALJ on this point, the Court is without sufficient information to conclude that

Ms. Ronquillo's work history is relevant evidence which adequately supports the ALJ's explanation for rejecting Dr. Hughson's assessed limitations. This reason, therefore, is not supported by substantial evidence.

Additionally, the Commissioner's reliance on 20 C.F.R. 404.1529(c)(3) ("[w]e will consider all of the evidence presented, including information about your prior work record . . .") is misplaced. 20 C.F.R. § 404.1529, *How we evaluate symptoms, including pain*, provides instruction and guidance on how symptoms, including pain, are considered in determining disability and the extent to which one's symptoms can reasonably be accepted as consistent with the objective medical evidence. This regulation explains that information about a claimant's prior work record, *inter alia,* will be considered when evaluating the intensity and persistence of alleged symptoms. 20 C.F.R. § 404.1529(c)(3). It does not address the relevance of a claimant's work history when evaluating medical opinion evidence.

### 3.  Ability to Care For Herself and Others

Last, the ALJ states, without more, that Ms. Ronquillo's ability to care for herself and others is inconsistent with Dr. Hughson's assessed limitations. The Court, however, again is left to speculate what evidence the ALJ is relying on to support this reason. The Court acknowledges that the ALJ discussed certain parts of Ms. Ronquillo's two function reports at steps 2 and 3 of the sequential evaluation process when he rated the severity of Ms. Ronquillo's mental impairments. Tr. 26. But the ALJ's step 2 and 3 ratings do not assist the Court in knowing what evidence the ALJ relied on to conclude that Ms. Ronquillo's ability to care for herself and others is inconsistent with Dr. Hughson's assessed limitations. Further, at step four, the ALJ's summary of Dr. Hughson's consultative exam is silent with respect to Ms. Ronquillo's ability to care for herself or others. Tr. 31. Additionally, the ALJ's summary of Ms. Ronquillo's

hearing testimony similarly is silent with respect to Ms. Ronquillo's ability to care for herself or others and in stark contrast notes Ms. Ronquillo's testimony about experiencing anxiety, especially around crowds of other people, and that she rarely leaves her residence.  Tr. 29.  And, ironically, the ALJ relies on Ms. Ronquillo's testimony about her isolation and difficulty adapting to change to find that the nonexamining State agency psychological consultant opinions were only partially persuasive.  Tr. 32.  Thus, in the absence of cited evidence the Court finds this reason also is not supported by substantial evidence.

In sum, the Court finds the ALJ failed to cite any specific evidence in formulating his findings as to the inconsistency of Dr. Hughson's opinion and that his reasons for rejecting Dr. Hughson's assessed limitations are not supported by substantial evidence.  The Court, therefore, recommends remand for proper consideration of Dr. Hughson's opinion pursuant to 20 C.F.R. § 404.1520c.

### E.    Remaining Claim

Ms. Ronquillo advances an additional argument in support of her Motion to Reverse or Remand.  However, because the Court concludes that remand is required as set forth above, it will not address the remaining claim of error.  *See Chambers*, 389 F.3d at 1143 (explaining that it is for the Appeals Council to "determine in the first instance whether, following submission of additional, qualifying evidence, the ALJ's decision is contrary to the weight of the evidence currently of record"); *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on remand).

### IV.  Recommendation

For all of the reasons stated above, the Court finds that Ms. Ronquillo's Motion is well taken.  The Court, therefore, recommends that the Motion be **GRANTED.**

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**